WINDHORST, J.
Appellant, Jana Marie Lindner McCaffery, seeks review of the trial court's January 9, 2018 judgment, in which the trial court ordered appellee, Joe Ann Young Lindner, to return $897,079.78 to the Lazy J-7 Trust, subject to a credit for those monies returned prior to judgment. For the following reasons, we affirm the trial court's judgment.
Facts and Procedural History
This matter involves the disputed management of a family trust fund established by John Lindner, Jr. ("Mr. Lindner"), Mrs. McCaffery's father and Mrs. Linder's husband. Mr. Lindner established the Lazy J-7 Trust on November 18, 1992 and served as the sole trustee until his death on March 24, 2001. Mrs. Linder was named as the sole income beneficiary, and Mrs. McCaffery and John E. Lindner, III were named as the principal beneficiaries of the trust with Mr. Lindner, III's interest set at Fifty Thousand Dollars, $50,000 and Mrs. McCaffery's interest for the remainder. Upon Mr. Lindner's death, Mrs. Lindner became the successor trustee and remains the trustee to date.
The Lazy J-7 Trust is a so-called "spendthrift" trust, which allows for invasion of principle only under limited circumstances. The trust was funded upon its creation with three pieces of immovable property: (1) a ranch in Hancock County, Mississippi owned by Mr. Lindner individually; (2) a property on Gentilly Blvd. in New Orleans; and (3) a property on Chateau Blvd. in Metairie. The Gentilly and Metairie properties were found to be marital property when they were donated. All three funding properties were sold during Mr. Lindner's tenure as trustee: (1) the ranch in 1998 for $2.4 million; (2) the Gentilly property in 1994 for $140,000; and (3) the Chateau property in 1999 for $310,000. Accordingly, the principal value of the trust at the time that Mrs. Lindner became trustee should have been not less than $2.85 million.
On September, 23, 2015, appellant, Mrs. McCaffery, filed a petition for trustee's accounting against her mother, Mrs. Lindner, of the inter vivos irrevocable Lazy J-7 Trust. Mrs. McCaffery received Mrs. Lindner's accounting in October, 2015 and learned that the trust's actual value at *1209 the time Mrs. Lindner became trustee was approximately $1.36 million. The accounting revealed that Mrs. Lindner distributed to herself almost $900,000 in trust principal during her tenure as trustee. After submission of the accounting, Mrs. McCaffery amended her petition to include demands for return of all monies from the sales of the three funding properties, and for damages for mismanagement of the trust by Mr. and Mrs. Lindner. It is undisputed that both Mr. and Mrs. Lindner invaded trust principle in violation of the terms of the trust during their respective terms as trustee. Mrs. McCaffery also sought removal of Mrs. Lindner as trustee and her appointment as successor trustee.
On July 14, 2016, the trial court held an evidentiary hearing on Mrs. McCaffery's motion to remove Mrs. Lindner as trustee. At this hearing, Mrs. Lindner testified that she took over as trustee in 2001 and that there was approximately one million three hundred thousand dollars ($1,300,000) in the trust. She also testified that she was in the meeting with legal counsel when the trust was created and that counsel told her and her husband that the money could be treated as their own property. The trial court declined to remove Mrs. Lindner as the trustee of the Lazy J-7 Trust, finding that there was no evidence of bad faith and thus no basis to support removal of the trustee.
At trial, Mrs. Lindner again testified that she and Mr. Lindner relied on the advice of counsel in treating the trust assets as their own. Mrs. Lindner also testified that, since the filing of this lawsuit, the terms of the trust have been explained to her and she has replaced an undisputed portion of the removed principal. Mrs. Lindner argued at trial that she should not be obligated to return any portion of invaded principle which constitutes her share of community property. She also asserted that she should not be held liable for any violation of the trust which occurred during Mr. Lindner's tenure as trustee.
At trial, the trial court considered the following issues: (1) whether Mrs. Lindner had a claim to a community interest in the trust's funding properties; (2) whether Mrs. Lindner should replace principal assets removed from the trust during Mr. Lindner's term as trustee; and (3) whether Mrs. Lindner should replace principal assets removed from the trust during her own term as trustee. The trial court ruled in favor of Mrs. McCaffery and against Mrs. Lindner, and ordered Ms. Lindner to return $897,079.78 to the Lazy J-7 Trust, subject to a credit for those monies returned prior to judgment. After trial on November 27, 2017, the trial court also (1) ruled that Mrs. Lindner does not have any community interest claim to the three funding trust properties and that she is not liable for the breaches committed by the predecessor trustee; and (2) excluded the expert testimony of appellant/Mrs. McCaffery's expert, a Louisiana attorney and board certified estate planning and administration expert.
Assignments of Error
Appellant asserts that the trial court erred (1) in not removing Mrs. Lindner as trustee of the Lazy J-7 Trust; (2) in not holding Mrs. Lindner liable for the breaches of trust by her predecessor, Mr. Lindner; and (3) in excluding the expert testimony and report of Carole Cukell Neff, a proposed expert in the usual and customary standards of a trustee. Appellee answered the appeal, asserting the trial court erred in (1) not classifying the Mississippi ranch and contiguous acreage as community property; and (2) holding that Mrs. Lindner tacitly ratified her contribution of her half of the two Louisiana properties to the Lazy J-7 Trust.
*1210 Standard of Review
A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of manifest error or unless it is clearly wrong. To reverse a factfinder's determinations the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and that the record establishes that the finding is clearly wrong or manifestly erroneous. Care Servs. v. DBR Assocs., L.L.C., 14-757 (La. App. 5 Cir. 2/11/15), 167 So.3d 936, 939-940. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. Id. Thus, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the conclusion of the trier of fact was a reasonable one. Id. Even though an appellate court may feel its own evaluations and inferences are more reasonable than those of the trier of fact, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Id.
Removal of the Trustee
Appellant asserts that Mrs. Lindner should be removed as trustee because she breached her duty as trustee by using an exorbitant amount of funds from the trust for her own personal gain, she failed to keep the trust assets separate from her personal assets and she has failed to administer the trust for the benefit of the beneficiaries. Based on the following, we find no error in the trial court's refusal to remove Mrs. Lindner as trustee.
A trustee is obligated to administer a trust solely in the interest of the beneficiary and shall exercise the skill and care that a man of ordinary prudence would exercise in dealing with his own property. La. R.S. 9:2082 ; La. R.S. 9:2090. A trustee has a duty to a beneficiary to take reasonable steps to take, keep control of, and preserve the trust property. La. R.S. 9:2091. Louisiana jurisprudence has recognized that these statutes evidence the Legislature's intention "to place the very highest possible fiduciary responsibility on the trustee towards the beneficiaries." Succession of Dunham , 408 So.2d 888, 901 (La. 9/8/1981).
A trustee shall be removed in accordance with the provisions of the trust instrument or by the proper court for sufficient cause. La. R.S. 9:1789. Louisiana jurisprudence provides that neither a conflict of interest, nor hostility, of itself, constitutes sufficient cause for removal of a trustee unless it materially impairs or interferes with the proper administration of the trust. Succession of Noe, 398 So.2d 1173, 1177 (La. App. 2 Cir. 1981), writ denied, 405 So.2d 530 (La. 1981). Removal of a trustee for sufficient cause requires allegations of conflict of interest, hostility, and impairment or interference with proper administration of the trust. Id.
Louisiana has a strong public policy in effectuating and protecting a settlor's intent as set forth in a trust instrument. Miller v. Miller, 35,934 (La. App. 2 Cir. 5/8/02), 817 So.2d 1166, 1169, writ denied, 02-1890 (La. 10/25/02), 827 So.2d 1154, (citing Albritton v. Albritton, 91-2903 (La. 5/26/92), 600 So.2d 1328 ). A settlor's intent controls, unless contrary to law or public policy. Miller, 817 So.2d at 1169, citing Richards v. Richards, 408 So.2d 1209, 1210 (La. 1981). Louisiana law has recognized a concept of trust indestructibility as an inherent part of Louisiana trust law. Richards, 408 So.2d at 1210.
The trial court found Mrs. Lindner's acts were not in bad faith and thus there was no basis for her removal as trustee. At trial, Mrs. Lindner testified that she and Mr. Lindner relied on the advice of counsel *1211 in treating and using the trust assets as their own. Based on counsel's advice, she thought Mr. Lindner could administer the trust in any manner he wanted to, and, once she took over as trustee, she believed she could do the same. After this lawsuit was filed, Mrs. Lindner learned that the terms of the trust did not allow her to use the trust funds as her own, and she replaced an undisputed portion of the principal back in the trust. The trial court found Mrs. Lindner's testimony credible. Given the deference to which the trial court's credibility determinations are entitled, this Court cannot disturb the trial court's reasonable evaluation of credibility.
Given these facts, we do not find a conflict of interest which has impaired or interfered with the proper administration of the trust. Once Mrs. Lindner learned that the terms of the trust prohibited her from using the funds for her own personal use, she returned the undisputed portion to the trust and, since then, there is no evidence of mismanagement. In addition, while appellant argues there is substantial animosity between her and Mrs. Lindner, under the jurisprudence, this alone is not sufficient cause for removal. The record does not indicate that this animosity has affected the administration of the trust. Thus, considering the record, the policy in favor of maintaining a settlor's intent, and the deference to which a trier of fact is entitled, we do not find the trial court's refusal to remove Mrs. Lindner as trustee to be manifestly erroneous or clearly wrong.
Trustee's Liability for Predecessor Trustee's Acts
Appellant asserts that the trial court erred in not holding Mrs. Lindner liable for the breaches of trust by her predecessor. La. R.S. 9:2204 provides:
§ 2204. Liability of successor trustee
A trustee shall not be liable to a beneficiary for a breach of trust committed by a predecessor trustee, unless he:
(1) Knows or should know of a situation constituting a breach of trust committed by his predecessor and improperly permits it to continue; or
(2) Neglects to take proper steps to compel the predecessor to deliver the trust property to him; or
(3) Neglects to take proper steps to redress a breach of trust committed by the predecessor.
The trial court found that the evidence did not support a finding that Mrs. Lindner knew or should have known that Mr. Lindner breached the trust during his tenure as trustee. Based on the record, we do not find this conclusion manifestly erroneous or clearly wrong.
Mrs. Lindner's testimony that she and Mr. Lindner relied on legal counsel's advice in using the trust assets as their own and that, once she learned that this was inconsistent with the trust administration, she replaced an undisputed portion of the principal back in the trust supports the trial court's conclusion that Mrs. Lindner did not know that her predecessor's acts constituted a breach of the trust. Given the trial court's acceptance of this explanation from Mrs. Lindner, the deference to which the trial court's credibility determinations are entitled, we find no error in the trial court's determination that Mrs. Lindner is not liable for the breaches of the trust by her predecessor trustee.
Exclusion of Appellant's Expert on Trusts and Estate Administration
Appellant asserts that the trial court erred in excluding the expert testimony and report of Carole Cukell Neff, a proposed expert in the usual and customary standards of a trustee. Based on Louisiana law, we find no abuse of discretion *1212 by the trial court in excluding this testimony.
A trial court has broad discretion in determining whether expert testimony is admissible, and whether an individual should or should not be permitted to testify as an expert. Normand v. Cox Communs. La., LLC, 14-563 (La. App. 5 Cir. 12/23/14), 167 So.3d 156, 163, writ denied, 15-1581 (La. 4/10/15), 163 So.3d 815, (citing Cheairs v. State ex rel. Department of Transp. and Development, 03-0680 (La. 12/3/03), 861 So.2d 536, 541 ). A trial court's decision regarding expert testimony will not be disturbed on appeal absent a finding that the trial court abused its discretion. Normand, 167 So.3d at 163, (citing Morgan v. State Farm Fire and Casualty Company, Inc., 07-0334 (La. App. 1 Cir. 11/2/07), 978 So.2d 941, 946 ).
Louisiana jurisprudence is well established that witnesses may not provide opinions regarding domestic law. UTELCOM, Inc. v. Bridges, 10-0654 (La. App. 1 Cir. 9/12/11), 77 So.3d 39, 54, writ denied, 11-2632 (La. 3/2/12), 83 So.3d 1046. Expert testimony is proper for the purpose of assisting the court only in those fields in which the court lacks sufficient knowledge to enable it to come to a proper conclusion without such assistance. Id.
Based on our review of the evidence and expert testimony, we find that the trial court did not abuse its discretion in refusing to accept Ms. Neff's opinion testimony as an expert witness on matters of trusts and estate administration under Louisiana law. Ms. Neff's testimony would have consisted of legal opinions and conclusions, more properly made by the trial court. The trial court does not require assistance in interpreting and applying Louisiana law. Accordingly, we find this assignment of error is without merit.
Community Property Classification
Appellee, Mrs. Lindner, asserts the trial court erred in not classifying the Mississippi ranch and contiguous acreage as community property. This property was donated to the Lazy J-7 Trust, eventually sold and the cash from the sale was placed in various brokerage accounts with the Lazy J-7 Trust as the account holder. The trial court found that when this immovable property was donated to the trust, it ceased to be marital property and became trust property. As a result, the trial court found that Mrs. Lindner did not maintain a community interest in the trust property. For the following reasons, we find no error in this conclusion.
La. C.C. art. 477 states that "Ownership is the right that confers on a person direct, immediate, and exclusive authority over a thing. The owner of a thing may use, enjoy, and dispose of it within the limits and under the conditions established by law." La. R.S. 9:1971 provides that a principal beneficiary's interest is acquired immediately upon the creation of a trust, subject to certain exceptions. See also Succession of Materiste, 273 So.2d 617 (La. App. 1 Cir. 1973). La. R.S. 9:1935 provides that "An addition of property to an existing trust by donation inter vivos is effective upon acceptance by the trustee."
A trust beneficiary does not have ownership of the corpus of the trust, but has an interest in the trust. Reynolds v. Reynolds, 388 So.2d 1135 (La. 1979). While ownership remains in the trustee, the fruits of the property could not fall into the community between the beneficiary wife and her husband. Id. at 1139. Pursuant to the creation of the Lazy J-7 Trust, Mr. Lindner irrevocably gave, donated, transferred and conveyed the property at issue to the trust. Mrs. Lindner was named "the sole income beneficiary of the trust for her lifetime" and was entitled to receive undistributed *1213 and accumulated income from the trust. There is nothing in the Act of Donation in Trust to support Mrs. Lindner's assertion that she or her husband maintained any community interest in the trust property.
Considering the authorities cited above, and language of the Lazy J-7 Trust, we find that the immovable property at issue became trust property at the time that Mr. Lindner donated the property to the trust. Upon creation of the Lazy J-7 Trust, the immovable property ceased to be community property and Mr. and Mrs. Lindner no longer maintained a separate community property interest in the property. We therefore find no error in the trial court's refusal to classify any portion of the trust property as community property. Therefore, this assignment of error lacks merit.
Ratification of Trust Contribution
Appellee also contends the trial court erred in finding that she tacitly ratified her contribution of her half of the two Louisiana properties to the Lazy J-7 Trust. Louisiana law requires the concurrence of both spouses for the alienation, encumbrance, or lease of community immovables. La. C.C. art. 2347. When the concurrence of the spouses is required by law, the alienation, encumbrance, or lease of community property by a spouse is relatively null unless the other spouse has renounced the right to concur. La. C.C. art. 2353. A contract is relatively null when it violates a rule intended for the protection of private parties, as when a party lacked capacity or did not give free consent at the time the contract was made. A contract that is only relatively null may be confirmed. La. C.C. art. 2031. La. C.C. art. 1843 states that ratification is a declaration whereby a person gives his consent to an obligation incurred on his behalf by another without authority. Tacit ratification results when a person, with knowledge of an obligation incurred on his behalf by another, accepts the benefit of that obligation. Zeller v. Webre, 09-45 (La. App. 5 Cir. 5/26/09), 17 So.3d 55, 58.
Louisiana cases support the proposition that the non-signing spouse may ratify an unsigned agreement affecting community property, including immovable property. In Kee v. Francis Camel Const., 532 So.2d 378 (La. App. 3 Cir. 10/5/88), the Louisiana Third Circuit Court of Appeal found that the wife ratified the grant of a right-of-way executed only by the husband. The project for which the right-of-way was granted lasted over eighteen months. Mrs. Kee (the wife) was obviously aware of the project, voiced no objection to her husband signing the right-of-way agreement, and was aware of the agreement as she signed it in the capacity of a witness.
In this instant matter, Mrs. Lindner was aware of the creation of the trust, the donation of the property to the trust, her husband's role as trustee and eventually succeeded her husband as trustee. In addition, she benefitted from the trust for many years and eventually administered the trust. Furthermore, as determined by the trial court, she actively participated in meetings with counsel concerning the trust's creation. We find these facts sufficient to constitute tacit ratification of the donation of her interest in the two Louisiana properties to the trust.
Conclusion
For the foregoing reasons, we affirm the trial court's judgment.
AFFIRMED